**LYNCHBURG TRAFFIC BUREAU (Corp.), Appellant,**

v.

**SMITH'S TRANSFER CORPORATION OF STAUNTON, VIRGINIA, and Middle Atlantic Conference, Inc., Appellees.**

**No. 9447.**

United States Court of Appeals Fourth Circuit.

Argued Sept. 22, 1964.

Decided Dec. 9, 1964.

W. G. Burnette, Lynchburg, Va. (J. B. Hoge, Lynchburg, Va., on brief), for appellant.

Edward W. Hummers, Jr., Washington, D. C. (Bryce Rea, Jr., and Rea, Cross & Knebel, Washington, D. C., on brief), for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge:

This is the fourth and, hopefully, the last chapter in the controversy between Lynchburg Traffic Bureau and Smith's Transfer Corporation of Staunton, Virginia.

The Bureau is a nonprofit corporation created to assist shippers and receivers of freight who are located in the Lynchburg, Virginia, area. The present appeal is from an order of the United States District Court for the Western District of Virginia dismissing the action begun on July 15, 1963, by the Bureau against Smith's Transfer, a certified common carrier by motor vehicle, and the Middle Atlantic Conference, a District of Columbia corporation, which is a trade association representing several hundred motor carriers. The complaint charged that in 1955 defendants had made an agreement to be bound by a certain decision of the Interstate Commerce Commission, and thereafter had failed to fulfill the agreement. Plaintiff sought $30,-000.00 damages for: (a) the alleged breach of the agreement, (b) past illegal charges, (c) "* * * costs and other expenses incurred by plaintiff in the prosecution of Civil Actions * * * [in the District Court]," and (d) "costs and other expenses incurred in the proceedings before the Interstate Commerce Commission."

In this, the latest round of litigation, the Middle Atlantic Conference has, for the first time, been named as an additional defendant. The District Court dismissed the complaint against both defendants for failure to state a claim up-

on which relief could be granted. This appeal followed.

Turning to the earlier appeals, the first was Smith's Transfer Corp. of Staunton, Va. v. Barksdale, 259 F.2d 498 (4th Cir. 1958), in which this court denied Smith's petition for a writ of mandamus against the District Judge to compel him to dismiss a suit brought against it by the Bureau. Later, in Lynchburg Traffic Bureau v. Smith's Transfer Corp., 285 F.2d 743 (4th Cir. 1961), cert. denied, 372 U.S. 915, 83 S.Ct. 729, 9 L.Ed.2d 721 (1962), the Bureau alleged that Smith's rates and charges for past shipments were in excess of those allowed by the applicable tariffs on file with the Interstate Commerce Commission. It was not clear from the record, however, whether or not the Bureau was seeking relief from rates which the Commission had merely criticized but had not seen fit to set aside and replace by other rates. This court indicated that if plaintiff was merely challenging the reasonableness of Smith's past charges made in accordance with applicable tariffs, the decision of the Supreme Court in T.I.M.E. Incorporated v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), would bar judicial relief; but if, on the other hand, Smith's charges were in excess of those approved by the Commission, plaintiff's cause of action might not fall within the T.I.M.E. ruling. Because of the obscurity of the facts alleged by the Bureau, the court could not, on the record before it, make an adjudication, and therefore remanded the case to the District Court for further proceedings.

Thereafter, in July, 1961, the Bureau filed an amended complaint which was dismissed after trial. On appeal, we affirmed, holding that because the charges under attack as unreasonable were in accordance with rate schedules duly filed with the Commission and still remaining undisturbed when made, the T.I.M.E. decision barred recovery. Lynchburg Traffic Bureau v. Smith's Transfer Corp., 309 F.2d 678 (4th Cir. 1962).

Plaintiff now presents a "contract" theory, which, it states, it "overlooked" in all the extended prior litigation. It contends that defendants made a "contract" with the Commission under the following circumstances: On May 21, 1954, the Interstate Commerce Commission, in Docket No. MC–C–1646, instituted an investigation of increased rates in the Middle Atlantic Territory, filed by the Middle Atlantic Conference. Before the conclusion of that investigation, the Commission, on April 15, 1955, in Docket No. MC–C–1795, instituted another investigation of a further increase, which had been permitted to take effect without suspension, on the undertaking of the Middle Atlantic Conference to be bound by any result that might be reached in the earlier investigation. The two investigations were consolidated and a decision was rendered on August 2, 1956, 67 M.C.C. 741. The Commission found that defendants' practice of charging higher class rates for shipments over shorter distances over the same route was unjust and unreasonable. It commented that: "In publishing rates in conformity with our findings in these proceedings, we shall expect the respondents to eliminate all [such] rate discrimination." 67 M.C.C. 741, 761. The Commission thereupon ordered the new increases cancelled "without prejudice to the filing of new schedules in accordance with the findings herein." 67 M.C.C. at 786. The rates thus approved were embodied in the new schedules thereafter filed and permitted to take effect as compliance with the Commission's order.

The argument advanced by the appellant Bureau apparently is that while the Commission's decision and order of August 2, 1956, standing alone, may not have retrospective operation, the appellees' undertaking to be bound by the Commission's decision in the consolidated case gave the new rates when filed such retrospective effect. It is the appellant's view that the appellees, by continuing to make charges at rates criticized but not yet cancelled by the Commission, breached their "undertaking" with the Commission. Authority for such undertaking or agreement is said

to be found in section 5a of the Interstate Commerce Act, 62 Stat. 472 (1948), 49 U.S.C.A. § 5b (1959), and it is further asserted that a remedy for a breach of such an agreement is provided by section 8 of the Act, 24 Stat. 382, 49 Stat. 543 (1935), 49 U.S.C.A. § 8 (1959).

We see in the so-called agreement nothing more than a consent to the consolidation for hearing of two pending proceedings and we find no warrant for attributing to it the results for which the appellant contends. Although the appellant denies any attempt to recover for past unreasonable charges made in accordance with applicable tariffs, it is doing just that, since its "contract" theory rests upon appellees' failure to vary from lawfully established rates. The true basis of this new theory is revealed by Paragraph VIII of the Complaint, which plainly states that the Bureau is seeking damages on account of the exaction of certain past charges.

The appellant's claim is utterly lacking in merit and the newly devised theory is merely a novel presentation of the rejected claim. If the cause of action is not barred by the prior litigation on principles of res judicata, the T.I.M.E. decision prevents recovery. In addition, the statutory provisions upon which the Bureau relies do not support its position, for 49 U.S.C.A. § 5b does not authorize, as it maintains, a "contract" between carriers and the Interstate Commerce Commission. This section merely provides that if the Commission approves an agreement between two or more carriers relating to rates, the parties are relieved from the operation of the antitrust laws. We are not dealing with an antitrust problem here. Moreover, the statute, 49 U.S.C.A. § 8, which appellant points to as furnishing it a remedy, is inapplicable, since it relates to rail and water carriers, and not to common carriers by motor vehicle.

The alternative claim, that section 216 (j) of the Interstate Commerce Act, 49 Stat. 558 (1935), 49 U.S.C.A. § 316(j) (1963), grants the appellant a common law remedy for appellees' "breach of contract," ignores the teachings of the Supreme Court in the T.I.M.E. case.

Finally, the damages claimed by appellant consist, in large measure, of counsel fees and other expenses incurred in the prior proceedings before this court and the Interstate Commerce Commission. We know of no precedent or authority for reimbursing an unsuccessful litigant for such expenditures.

For all of the above reasons, the order of the District Court is

Affirmed.